UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

**LOUISIANA LIMESTONE & LOGISTICS, LLC**     *     **CIVIL NO. 6:13-0798**

**VERSUS**     *     **JUDGE DOHERTY**

**GRANITE GROUP INTERNATIONAL, INC.**     *     **MAGISTRATE JUDGE HILL**

REPORT AND RECOMMENDATION

Pending before the undersigned for report and recommendation is the Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure filed by the defendant, Granite Group International, Inc. ("Granite Group"). [rec. doc. 3]. Plaintiff, Louisiana Limestone & Logistics, LLC ("Louisiana Limestone"), has filed opposition, to which Granite Group has filed a reply. [rec. docs. 17 and 18]. Louisiana Limestone has additionally filed a sur-reply. [rec. doc.22]. For those reasons which follow, it is recommended that the Motion to Dismiss be **GRANTED**.

BACKGROUND

Louisiana Limestone is a Louisiana Limited Liability Company. Granite Group was incorporated under the laws of the state of Florida and, prior to its dissolution by the Florida Secretary of State, maintained it's principal place of business in Florida. Louisiana Limestone filed suit against Granite Group in Louisiana state court for breach of contract involving a salvage job which was conducted on the Ohio and Green Rivers in Kentucky and Indiana. Granite Group removed the case to this Court invoking this Court's diversity jurisdiction. Thereafter, Granite Group filed the instant Motion to Dismiss arguing that it lacks sufficient

contacts with the state of Louisiana to be subject to this Court's personal jurisdiction.

## FACTS

In December, 2010, Granite Group contracted with Inland Towing Marine, LLC ("Inland"), an Arnaudville, Louisiana entity, for the salvage job at issue. The contract was executed in Florida and provides for the application of Florida law. The principal for Inland who executed the contract, Kenneth Noel, indicated that he was from Alabama. Granite Group was introduced to Inland by a Tennessee resident, Ronald Newcomb.

Inland sub-contracted with Louisiana Limestone for tug and towing services. Accordingly, Louisiana Limestone mobilized equipment and personnel to the job-site in Kentucky, and began operations. Granite Group was not involved in the discussions surrounding the execution of the contract between Inland and Louisiana Limestone, and Granite Group did not know of the existence of this contract until after Inland defaulted on the salvage job in early January, 2011, when Mark Barati ("Barati"), owner of Granite Group, traveled to the job-site.

After Inland defaulted on the salvage job, Granite Group and Louisiana Limestone discussed the possibility of Louisiana Limestone continuing the salvage job in place of Inland. These discussions were held with personnel at the job-site in Kentucky and Indiana. Curtis Buford ("Buford"), sole owner of Louisiana Limestone also traveled to Indiana to meet with Barati about the possibility of Louisiana Limestone completing the job. Buford and Barati communicated thereafter by mail, email or telephone. Unbeknownst to Barati, Buford was

apparently back in Louisiana when these communications occurred. No meetings were held in Louisiana. Buford alleges that during these discussions, Barati mentioned that Granite Group had an office in Louisiana and also inquired about purchasing barges and scrap iron in Louisiana for Granite Group.

While negotiations to complete the salvage job continued, Granite Group apparently leased a Louisiana Limestone vessel which was apparently at the job-site before Inland's default. Granite Group also named Louisiana Limestone as a certificate holder on its commercial general liability insurance policy. Granite Group additionally sent contract proposals to Louisiana Limestone which, at the request of Buford, provided that Louisiana law would govern. However, these proposals were never accepted and, accordingly, the parties never reached a formal agreement for Louisiana Limestone to complete the salvage project.

In connection with the same salvage project at issue herein, Inland also sub-contracted with C&R Contractors, Inc. ("C&R"), a Louisiana corporation, for crane barge services. As was the case with Louisiana Limestone, Granite Group had no knowledge of C&R's involvement in the salvage operation until after Inland had defaulted. Moreover, although Granite Group met with C&R job-site personnel, it never reached an agreement with C&R to complete the salvage operation. No meetings between C&R and Granite Group were held in Louisiana. In a related state court action filed by C&R, Granite Group's exception of lack of personal jurisdiction was granted.

After Inland's default, while trying to complete the project, Granite Group also contacted divers. The divers contacted by Granite Group were physically located in Kentucky, and

Granite had no knowledge of whether any particular diving company had an office in Louisiana. Granite ultimately procured the services of a Kentucky diving company.

Granite Group admits that it solicited business in Louisiana on two occasions for unrelated projects in Marksville and New Iberia. In connection with these potential projects, Granite Group applied on-line for authority from the Louisiana Secretary of State to conduct business in Louisiana. In it's October 18, 2010 registration with the Louisiana Secretary of State, Granite Group listed a registered business office in Louisiana and appointed an agent for service of process at that same address. Granite Group's registered agent is a personal friend of Barati, who lives in Texas but does trucking and construction work in Louisiana. Three meetings were held in Louisiana in connection with these potential projects; discussions ended in December, 2010 when Granite Group was unable to secure either project. Granite Group has never performed any work in Louisiana, nor derived any revenue from Louisiana in connection with these potential projects. Further, Granite Group never conducted any business from the address listed as it's Louisiana office and Granite Group's registered agent never received anything in Louisiana at that address on behalf of Granite Group. Granite Group's registration was revoked by the Louisiana Secretary of State on March 15, 2012.

## LAW AND ANALYSIS

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Luv n' care, Ltd. V. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006) *citing Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th

Cir. 1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. *Id.* This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.*

To exercise personal jurisdiction over a nonresident defendant, two requirements must be met. *Dickson Marine Incorporated v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999). First, the nonresident defendant must be amenable to service of process under the forum State's jurisdictional long-arm statute. *Id.* Second, the assertion of *in personam* jurisdiction must be consistent with the Fourteenth Amendment's Due Process Clause. *Id.* Louisiana's long-arm statute was specifically amended to permit service of process to the extent permitted by the due process clause. *Id.*; *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990). The statutory and constitutional inquiries thus merge. *Dalton*, 897 F.2d at 1361.

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. *Luv n' care, Ltd.,* 438 F.3d at 469 *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction may be general or specific. *Id*.

Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant, even if the defendant's contacts are unrelated to the cause of action pled. *Id. quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-415, 104 S.Ct. 1868, 80

L.Ed.2d 404 (1984); *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) *citing Helicoptetros Nacionales*, 466 U.S. at 414, fn. 9. However, the unrelated contacts must be "substantial" in order to support general jurisdiction. *Wilson*, 20 F.3d at 649 *citing Keeton*, 465 U.S. at 779 fn. 11. Accordingly, the Fifth Circuit has cautioned that the "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation omitted).

If a nonresident defendant has sufficient unrelated minimum contacts with the forum state, courts must then also consider whether the "fairness" prong of the jurisdictional inquiry is satisfied. *Id. citing Asahi*, 480 U.S. at 105, 107 S.Ct. at 1033 and *Bullion*, 895 F.2d at 216. The Supreme Court has stated that the "fairness" of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including the following: (1) "[T]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at fn. 3 *quoting Bullion*, 895 F.2d at 216 n. 5 *citing Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033.

Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Luv n' care,* 438 F.2d at 469 *quoting Helicopteros Nacionales,* 466 U.S. at 414. A federal court satisfies the constitutional requirements for specific jurisdiction if the defendant has "minimum contacts"

6

with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." *Id*. quoting *Int'l Shoe*, 326 U.S. at 316. The Fifth Circuit has consolidated the personal jurisdiction analysis into a three-step inquiry: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Id*. citing *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

To determine whether a foreign business has "minimum contacts" with the forum state, federal courts must identify some act whereby the business "purposely avail[ed] itself of the privilege of conducting activities [there], thus invoking the benefits and protections of its laws." *Id.* at 469-470 *citing Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A single purposeful contact may confer jurisdiction. *Id*. at fn. 3 *citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). However, the defendant's purposeful availment must be such that the defendant "reasonably anticipates being haled into court" in the forum state. *Id.* at 470 *citing World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King,* 471 U.S. at 475.

In determining whether the exercise of jurisdiction is fair and reasonable, the following factors may be considered: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies. *Nuovo Pignone*, 310 F.3d at 382 *citing Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 324 fn. 9 (5th Cir. 1996); *see also Luv n' care, Ltd.,* 438 F.3d at 473.

Stated in other terms, "when a controversy is related to or 'arises out of' a defendant's contacts with the forum" the court must examine the essential foundation of *in personam* jurisdiction, that is, the "relationship among the defendant, the forum, and the litigation." *Bean Dredging*, 744 F.2d at 1085 *quoting Helicopteros Nacionales*, 104 S.Ct. at 1872 *quoting Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). Among the inquiries examined is "whether the forum state has any special interest in exercising jurisdiction, and whether the convenience of the parties favors litigating in another state." *Id. citing Austin v. North American Forest Products*, 656 F.2d 1076 (5th Cir. 1982).

## A. General Jurisdiction

Louisiana Limestone contends that this Court may exercise general jurisdiction over Granite Group because Granite Group registered with the Louisiana Secretary of State, listing both a Louisiana business office and a registered agent. However, Louisiana Limestone's position is not consistent with Fifth Circuit precedent holding that the presence of the

registered agent and registered business office alone is insufficient to support the exercise of general jurisdiction. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181-182 (5th Cir. 1992) *citing Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir. 1971) and *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987) ("being qualified to do business . . . is of no special weight" in evaluating general personal jurisdiction" and no cases support "the proposition that the appointment of an agent for process and the registration to do business within the state, without more, suffices to satisfy the criteria for the exercise of general jurisdiction."); *Crochet v. Wal-Mart Stores, Inc*., 2012 WL 489204, 4 (W.D. La. 2012); *DNH, LLC v. In-N-Out Burgers*, 381 F.Supp.2d 559, 565 (E.D. La. 2005) ("Qualifying to do business in a state and appointing an agent for service of process there do not amount to a 'general business presence' of a corporation that could sustain an assertion of general jurisdiction. ").

      Granite Group never conducted any business from the address listed as it's Louisiana office and Granite Group's registered agent never received anything in Louisiana at that address on behalf of Granite Group. Rather, the agent and address were only provided for service of process; the address was not an actual place of business. *See Wenche Siemar,* 966 F.2d at 182 *quoting Ratliff*, 444 F.2d at 748 (""We think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context. Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another."); *see also Felch*, 92 F.3d at 328 ("[a]pplying for the

privilege of doing business is one thing, but the actual exercise of that privilege is quite another").

Moreover, this Court cannot find that Granite Group's two unsuccessful attempts to acquire projects in Louisiana, which included a total of only three meetings in this State, separately, or in conjunction with Barati's alleged inquiries to Buford about the possibility of doing business in Louisiana, constitute the type of "continuous and systematic" or "substantial" contacts necessary for this Court to exercise general jurisdiction over Granite Group. To the contrary, these contacts were isolated, short-lived, sporadic and inconsistent. These isolated and unrelated contacts are insufficient to have reasonably alerted Granite Group to the possibility of being hailed into court in Louisiana.

Furthermore, because these projects never materialized, this Court cannot find that Granite Group purposefully availed itself of the privileges and benefits of the laws of Louisiana. Granite Group never actually conducted any business in Louisiana, never derived any revenue from these Louisiana contacts, never had any bank accounts or property in Louisiana and did not have any personnel in Louisiana. Thus, the exercise of general jurisdiction over Granite Group by this Court would deprive it of its due process liberty interest not to be subjected to a suit in a distant forum with which it has little connection.

Finally, the Court gives little weight to Louisiana Limestone's argument that Granite Group never sought dissolution under Louisiana law. Granite Group, a Florida corporation was administratively dissolved pursuant to Florida law. *See* rec. doc. 1, ¶ 8. Moreover, Granite Group's registration was revoked by the Louisiana Secretary of State.

For these reasons, the exercise of general jurisdiction over Granite Group would be improper.

**B. Specific Jurisdiction**

Louisiana Limestone additionally argues that this Court may exercise specific jurisdiction over Granite Group. In support of this argument, Louisiana Limestone relies on the alleged procurement or attempted procurement by Granite Group of the services of four Louisiana entities for the salvage job, namely, Inland, Louisiana Limestone, C&R and the unidentified diving company. These contacts, however, do not satisfy the minimum contacts requirement. More specifically, these contacts do not demonstrate that Granite Group "purposely availed" itself of the privilege of conducting activities with Louisiana companies, such that Granite Group could "reasonably anticipate[] being haled into court" in Louisiana.

While it is clear that Granite Group contracted with Inland, a Louisiana company, to perform the salvage job, the existence of this contract is insufficient, in and of itself, to support the exercise of specific jurisdiction. *Burger King*, 471 U.S. at 478; *Holt Oil and Gas Corporation v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Moncrief Oil, Inc. v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir. 2007); *We're Talkin' Mardi Gras, LLC v. Davis*, 192 F.Supp.2d 635, (E.D. La. 2002). Rather, in contract cases, the Fifth Circuit has consistently looked to the place of contractual performance to determine whether the making of a contract with an in-state resident is sufficiently purposeful to satisfy minimum contacts. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) *citing Barnstone v.*

*Congregation Am Echad,* 574 F.2d 286, 288 (5th Cir. 1978). In addition to the focus on the place of performance, the Fifth Circuit has also recognized that the place of contracting and the law governing the contract, while not necessarily determinative, are relevant factors for determining purposeful activity. *Id.* at 1069; *see also Burger King*, 471 U.S. at 479 (noting that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.").

In this case, the salvage job was to be performed in Kentucky and Indiana. The contract was executed in Florida, by a principal of Inland who was purportedly from Alabama; the contract provided that Florida law would apply. Finally, Granite was introduced to Inland by a Tennessee resident. Under these circumstances, the connection to Louisiana rests on nothing more than the mere fortuity that Inland happened to be a Louisiana company.

The same is true with respect to C&R and Louisiana Limestone. Granite Group's contacts with respect to C&R and Louisiana Limestone are even more attenuated. Granite Group did not contract with either company and did not even know of their involvement in the salvage project until after Inland defaulted.

Louisiana Limestone also points to the contract discussions between it and Granite Group after Inland's default. However, these discussions took place only after Louisiana Limestone had mobilized equipment and personnel to the Kentucky-Indiana job-site pursuant to its sub-contract with Inland, of which Granite Group was unaware. Thus, Granite Group did

not seek to engage Louisiana Limestone; Louisiana Limestone was already engaged at the job-site by Inland without the prior knowledge or permission of Granite Group. Under these circumstances, Granite Group cannot be deemed to have purposefully directed its activities towards Louisiana.

Moreover, the sole in-person meeting between Barati and Buford occurred in Indiana after both had traveled to the out-of-state job-site. No meetings between the two about the Kentucky-Indiana salvage job ever occurred in Louisiana.

Finally, while subsequent communications between the two occurred by mail, email or telephone, such communications have been found by the Fifth Circuit to be insufficient, alone, to support a finding of specific jurisdiction; otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state. *See Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (and cases cited therein); *Holt Oil and Gas Corporation v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Moncrief Oil,* 481 F.3d at 312. This is particularly true in this case, given that the parties never actually formalized any contractual agreement as a result of these communications.

In sum, all of these communications to Louisiana rest on nothing more than the mere fortuity that Buford happened to be a resident of Louisiana and that Louisiana Limestone happened to be a Louisiana company. These communications, and the result thereof, would have been the same regardless of where Buford lived or where Louisiana Limestone's offices were located. Under these circumstances, this Court cannot find that purposeful availment of the benefits of Louisiana law by Granite Group.

After Inland's default, Louisiana Limestone suggests that Granite Group also attempted to procure the services of a Louisiana diving company.  However,  the divers contacted by Granite Group were physically located in Kentucky. Granite had no knowledge of whether any particular diving company for which these divers may have worked had an office in Louisiana. Finally, a Kentucky diving company, not a Louisiana company, was ultimately hired by Granite Group.

For these reasons, the exercise of specific jurisdiction over Granite Group would be improper.[1]

**C. Fairness**

The undersigned also finds that this Court's exercise of personal jurisdiction over Granite Group would be unfair and unreasonable and would offend traditional notions of fair play and substantial justice.  It would clearly be unfair and burdensome to require Granite Group to be haled into this Louisiana court in connection with a contract for performance of a salvage operation conducted in Kentucky and Indiana.  This is particularly true, given that

---

[1] The court has not considered Granite Group's registered agent or registered business office in the analysis of specific jurisdiction because plaintiff's cause of action neither arises out of, nor is it directly related to, these contacts.  See *Kelly v. Syria Shell Petroleum Dev., B.V.*, 213 F.3d 841, 854, 855 (5th Cir. 2000) (no specific jurisdiction conferred by foreign defendant's appointment of an agent because the claims did not arise out of this contact); *O'Quinn v. World Indust. Constructors, Inc.,* 847 F.Supp. 143, 146 (E.D. Tex. 1995) (same).  At the hearing of this Motion, defense counsel advised that service of this suit was not perfected on the registered agent and the record establishes that Granite Group did not utilize the office at the registered address for any negotiations or work relating to the salvage job at issue herein.
   Louisiana Limestone also implies that statements of Barati to Buford evidence an intent on the part of Granite Group to conduct business in Louisiana.  However, these statements and inquiries are unrelated to the cause of action asserted herein.  Moreover, the subject of these statements and inquiries never materialized.  Granite group never had a functioning office in Louisiana and did not purchase barges or scrap iron in Louisiana.  Accordingly, these statements and inquiries are not determinative, and in any event, even if relevant, are accorded little to no weight in the Court's specific jurisdiction analysis.

Louisiana has little to no interest in contractual work which was performed outside this State. While Louisiana Limestone has an interest in securing relief, that relief must be obtained through litigation where the work was performed and the majority of the witnesses are probably located.  For these same reasons, it would be inefficient to resolve this controversy in this Louisiana Court.

In sum, on the record before this Court, the undersigned finds that the burden on Granite Group outweighs the legitimate interests of Louisiana Limestone and the State of Louisiana.  Therefore, exercise of personal jurisdiction over Granite Group is not permissable.

## CONCLUSION

Based on the foregoing, it is recommended that the Motion to Dismiss for lack of personal jurisdiction filed by the defendant, Granite Group International, Inc. [rec. doc. 3] be **GRANTED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by**

x

**Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed January 27, 2014, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

```
Copy sent:  RFD
On:   1/27/2014
By:   MBD
```